IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARY BELL, | ) | |
|     Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 07-0486-CB-B |
| PHIL PERKINS, et al., | ) | |
|     Defendants. | ) | |

**OPINION and ORDER**

This matter is before the Court on motions to dismiss for failure to state a claim filed by all defendants. (Docs. 6, 8, 12 & 16.) Plaintiff, who is proceeding *pro se*, has filed objections and memorandum briefs in opposition to each of the motions to dismiss. (Docs. 20-26.) After due consideration of the issues raised, the Court finds that the motions to dismiss are due to be granted.

**The Complaint**

    **Factual Allegations**[1]

Plaintiff Gary Bell, an African American, is a former resident of Grove Hill, Alabama, where he lived with his girlfriend, Jennifer Hawkins, and their children, Dewayne Bell and Nicole Bell, until June 15, 2002. The claims in this federal lawsuit are the result of Bell's interactions with the legal system in Grove Hill and Clarke County. Those interactions were, for the most part, related to child support and visitation issues that arose after Gary Bell's separation from Ms. Hawkins. The defendants are:  Phil Perkins, an attorney in private practice in Grove

---

[1]For purposes of a motion to dismiss, the facts stated in the complaint are taken as true. *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993). The facts set forth below are taken directly from the complaint and documents attached thereto.

Hill; Philip Mason, Assistant District Attorney for Clarke County;  Steve Bradley, a Court Reporter for the Circuit Court Clarke County; Lamar Johnson, City Attorney for Grove Hill; Amee Moore and Jackie Garrick, Magistrates for the City of Grove Hill; Buster Hough, a Grove Hill police officer; Lamar Hudson, Mayor of Grove Hill; and the City of Grove Hill.

In April 2003, Hawkins filed a claim against Bell for child support, even though Bell was actively supporting Hawkins and the children.  In October 2003, Bell met with Hawkins and Robin Paul of the Department of Human Resources (DHR) and proved that he was supporting Hawkins and the children.  All agreed that no retroactive child support payments would be necessary and that the only issue to be addressed was future monthly payments.  However, when Clarke Count District Judge William Kimbrough reviewed Hawkins child support claim, he imputed income to Bell and ordered Bell to pay $3,880 in retroactive child support.  Judge Kimbrough did not consider the child support payments that Bell had already made.  Bell hired defendant Phil Perkins, a local attorney, to appeal Judge Kimbrough's order.

The appeal was heard by Circuit Judge J. Thomas Baxter on June 8, 2004.  Bell had receipts and checks to prove that he had provided prior support to Hawkins and the children, but Perkins declined to look at them and told Bell to bring them to court.  When Perkins finally reviewed the checks on the day of the hearing, he refused to offer them as evidence because they were not in the proper form.  Bell had requested that Perkins ask the Judge to enter a custody order that would allow Bell visitation "every weekend, holidays, birthdays, spring break, etc." and that would also allow "Bell to claim federal and state income [tax deductions] every other year on Nicole Bell."  32.)  Perkins did not convey the latter request to Judge Baxter.  Judge Baxter stated on the record that Bell would have the children every other weekend but did not

enter a written order to that effect. Bell appealed.

The court reporter, Steve Bradley, did not record everything said at the appeal hearing, and he did not accurately record testimony. Specifically, testimony regarding Bell's income was not accurate. Assistant District Attorney Philip Mason made a statement during his questioning of Bell, to-wit: "You said you make $500.00 per week." The court reporter incorrectly recorded Mason's statement as: "Did you say you made $500.00 per week?" Also, the transcript contains statements that were not made at the proceedings. Specifically, Perkins did not convey to Judge Baxter the visitation Bell had requested, but the transcript reflects that Perkins did.

Following the hearing, Judge Baxter entered an "Order Establishing Paternity and Setting Amount of Child Support." (Compl., Doc. 1, Ex. 2.) The order imputed income of $500 per week to Gary Bell, ordered Bell to pay $310 per month in child support and ordered Bell to reimburse the state $300 for paternity-testing fees and $3,828 for retroactive child support in the amount. (*Id.*) Bell appealed to the Alabama Court of Civil Appeals and lost. Bell has been charged with contempt of court for failing to pay child support. He owes in excess of $12,000.

On July 5, 2004, after having the children for several days visitation, Bell returned them to Grove Hill. He was, however, unable to locate Hawkins to pick up the children, so he called the Clarke County Sheriff's Department. Bell told the Sheriff's Department he did not want the Grove Hill Police Department to respond to his call.[2] When Hawkins finally arrived, she attacked Bell. Bell again called the Clarke County Sheriff's Department to report the attack, but the Sheriff's Department dispatched the Grove Hill Police Department to the scene. Bell was

---

[2]The complaint implies, but does not explicitly state, that Hawkins had an affair with a Grove Hill Police officer in 2002.

arrested by Grove Hill Police Officer Buster Hough (one of the defendants in this action) and spent the night in jail.  Bell was apparently charged with a misdemeanor, since his case was set for trial in Grove Hill Municipal Court.  Bell hired Phil Perkins to represent him in this action.  The case was set for trial on January 10, 2005.  Prior to trial, Bell told Perkins he wanted to charge Hawkins with assault, and Perkins told Bell he might be able to talk with the District Attorney about that.   Before the case was tried, Grove Hill City Attorney Lamar Johnson (also a defendant in this action) dismissed the charges against Bell.  More accurately, the charges were dismissed on the condition that Bell have "no adverse contact" with Hawkins for a three-month period.[3]

On May 26, 2005,  Bell went to the City of Grove Hill to obtain a warrant against Hawkins.[4]  The city magistrates, defendants Aimee Moore and Jackie Garrick, were extremely rude to Bell and refused to allow him to sign a warrant.  Bell went to see City Attorney Johnson, but Johnson angrily told him the city would not charge Hawkins. On July 2, 2005 Bell filed a civil lawsuit against Hawkins regarding the assault.  A trial was conducted in state district court on November 28, 2005, and Judge Kimbrough ruled in favor of Hawkins.  On that same day, a written order was generated.  Bell appealed, but Judge Baxter dismissed the appeal.

### Claims Asserted

Bell has asserted five counts seeking for relief for violation of Federal civil rights statutes.  Counts One, Two and Three arise from the child support hearing that took place before

---

[3]The Case Action Summary from Grove Hill Municipal Court contains the following Bench Notes: "1-10-05 cont'd for 3 mos.  no adverse contact dismissed".

[4]The complaint implies, but does not explicitly state, that the basis for seeking a warrant was Hawkins July 5th, 2004 attack on Bell.

Judge Baxter. In Count One, Bell alleges violations of 42 U.S.C. §§ 1981, 1983 and 1985 against Perkins because Perkins did not introduce proof of Bell's child support payments into evidence at the child support hearing. In Count Two, Bell again asserts §§ 1981, 1983 and 1985 violations, this time against Perkins and court reporter Steve Bradley. Plaintiff alleges that Perkins failed to convey Bell's visitations demands to Judge Baxter and that Perkins and Bradley conspired to change the transcript in order to hide Perkins' mistake. In Count Three, Bell asserts violations of §§ 1983 and 1985 against Perkins, Bradley and Clarke County District Attorney Philip Mason. Bell alleges that during the child support hearing Mason falsely stated that Bell had admitted making $500 per month, that Bradley did not accurately record the questions and testimony in this regard and that Perkins was a participant with Mason and Bradley in the conspiracy to deprive Bell of a fair hearing.

Counts Four and Five arise from events triggered by Bell's arrest in July 2004. Count Four is the direct result of Bell's arrest and prosecution by Officer Buster Hough, the City of Grove Hill and Mayor Lamar Hudson. According to the complaint, "the strong biasness against a certain race of people within this community was also detrimental to Bell." These defendants did not enforce the statutes and ordinances related to police procedure thereby depriving Bell of his Fourth and Fourteenth Amendment rights in violation of §§ 1983 and 1985. Count Five also asserts §§ 1983 and 1985 claims, this time against city magistrates Moore and Garrick, City Attorney Johnson, Mayor Hudson and the City of Grove Hill for refusing to allow Bell to swear out a warrant against Jennifer Hawkins.

**Motions to Dismiss**

Each of the defendants has, either separately or in conjunction with other defendants,

filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.  Defendants Perkins, Mason and Bradley have filed individual motions.  Defendants Lamar Johnson, Amee Moore, Jackie Garrick, Buster Hough, Lamar Hudson and the City of Grove Hill (collectively "the Grove Hill defendants") have filed a joint motion to dismiss.  Because the motion filed by the Grove Hill defendants is both succinct and straightforward, the Court will first address that motion first.  The motions filed by the remaining individual defendants will be addressed in turn.  First, however, it is necessary to the standard of review applicable to these motions.

## Standard of Review

A motion to dismiss under Rule 12 (b)(6) may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957)).  For purposes of a motion to dismiss, the Court must accept all the allegations of the complaint as true and construe the facts asserted in the light most favorable to the plaintiff.  *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993).  Because plaintiff is proceeding *pro se*, his pleadings must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519 (1972).

## Grove Hill Defendants

These defendants assert that plaintiff's claims against them are due to be dismissed because those claims are barred by the statute of limitations.  Various Grove Hill defendants are charged in Counts Four and Five with violations of 42 U.S.C. §§ 1983 and 1985.  Because there is no federal statute of limitations specifically applicable to either § 1983 or § 1985, Alabama's

residual personal injury statute of limitations governs.  *Owens v. Okure*, 488 U.S. 235 (1989); *Trawinski v. United Technologies,* 313 F.3d 1295, 1298 (11th Cir. 2002).  According to state statute, that limitations period is two years.  Ala. Code § 6-2-38 (1975).  Count Four is based on his July 2004 arrest and the subsequent prosecution which concluded in January 2005.  Count Five is based on events that took place on May 26, 2005.  The complaint was filed on July 5, 2007.  Hence, both counts arise from events that took place more than two years before this action was filed.

Plaintiff argues, however, that the limitations period has not run because he "faces future injuries due to the negligence of both the City of Grove Hill and the State of Alabama, beginning in June 2002 , and the court hearing in October 2003." (Def.'s Rsp., Doc. 21, at 2.)  From this it appears that the plaintiff is attempting to rely on the continuing violation doctrine to extend the limitations period.  Generally, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew, or should have known: (1) that he suffered an injury and (2) who inflicted the injury.  *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).  The continuing violation doctrine provides an exception, however, when the violation involves a continuing injury.  "'The critical distinction in the continuing violation analysis ... is whether the plaintiff[ ] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.'" *Lovett v. Ray*, 327 F.3d 1181 (11th Cir. 2003) (quoting *Knight v. Columbus*, *Ga.*, 19 F.3d 579, 580-81 (11th Cir. 1994)).  Plaintiff knew or should have known that he suffered the injuries complained of in Count Four no later than January 10, 2005, when the case against him was dismissed.  The violation asserted in that count, *i.e.*, the arrest and prosecution based on the July 2, 2004

7

incident, constitute a one-time violation, not a continuing one.  Likewise, Count Five is based on a single event involving an obvious injury–the refusal of certain Grove Hill defendants to allow him to swear out a warrant on May 26, 2005.

In sum, the Grove Hill defendants have invoked the statute of limitations as an affirmative defense. Counts Four and Five assert claims under 42 U.S.C. §§ 1983 and 1985, both of which are governed by a two-year statute of limitations.   These claims accrued more than two years before this lawsuit was filed.  Since neither claim involves a continuing violation that would extend the date of accrual, they are time barred.

**Phil Perkins**

Defendant Perkins, Bell's former attorney, contends that the claims set forth against him in Counts One, Two and Three should be dismissed for the following reasons: (1) The complaint does not state a claim for relief under 42 U.S.C. § 1981 because there are insufficient facts alleged to support a cause of action under the statute. (2) The complaint does not state a claim for relief under 42 U.S.C. § 1983 because this defendant is not a state actor.  (3) The complaint does not state a claim for relief under 42 U.S.C. § 1985 because the allegations of conspiracy are vague and conclusory.  (4) The Court lacks subject matter jurisdiction because the complaint does not a claim under any of the civil statutes invoked in the complaint and there is no diversity jurisdiction.  (5) The complaint does not allege a cause of action under the Alabama Legal Services Liability Act (ALSLA).  (6) Any claim asserted under  the ALSLA is time barred. Several of these issues can be dispensed with summarily.  In response to the motion to dismiss, plaintiff agrees that Perkins is not a state actor and, therefore, his § 1983 claims are due to be dismissed.  Perkins' subject matter jurisdiction argument is somewhat puzzling.  Failure to state

a federal claim subjects a plaintiff's claims to dismissal under Fed. R. Civ. P. 12(b)(6) and does not invoke questions of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Finally, Perkins arguments regarding Alabama state law are equally puzzling since no state law claims have been asserted in the complaint. Hence, the question remaining is whether the complaint states a claim against Perkins under § 1981 or § 1985.

Section 1981, which prohibits discrimination in the making and enforcement of contracts, states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . .

42 U.S.C. § 1981(a). The statute further defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To state a cause of action under § 1981 plaintiff must allege facts that, if proved, would demonstrate: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arcoub, Gopman & Associates, Inc.* 490 F.3d 886, 891 (11th Cir. 2007) (quoting *Jackson v. BellSouth Telecomms., Inc.*, 372 F.3d 150, 1270 (11th Cir. 2004)). "[W]hen a plaintiff's complaint sets forth facts in support of his claim for relief and tracks the language of the applicable cause of action, the legal conclusions are not talismanic because it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (internal quotations and citation omitted). Here,

plaintiff asserts that counsel breached the contract to provide legal services and that the breach was discriminatory. While the complaint more or less employs some of the statutory language, the lengthy allegations of fact provide no support for the complaint's conclusion that the breach was the result of intentional racial discrimination.

Plaintiff's § 1981 claims are asserted in Counts One and Two. In Count One, plaintiff alleges that he and Perkins entered into a contract for legal representation and that Perkins did not perform to plaintiff's satisfaction. The specific allegations are as follows:

> Perkins breached his agreement with Bell by not having Bell's checks of support admitted into evidence during a circuit court hearing. Because Bell is an African-American, Perkins treated him as most African-Americans are treated, and only requested what most African -Americans request.

(Compl. ¶ 114.) The relationship between how most African-Americans are treated, what most African-Americans request and Perkins' failure to offer evidence of child support payments is unclear. Put simply, plaintiff alleges that his attorney breached their contract because he is African-American. That, however, is a conclusion, and nowhere in the more than 100 paragraphs of facts is there any allegation to support this conclusion. Bell further alleges that Perkins is part of "a biased legal community within the City of Grove Hill, Alabama." (*Id.*) As with the previous assertion, there are no facts from which one could infer that Grove Hill's legal community is biased. Moreover, even assuming this to be a factually-supported allegation of racial bias, no facts are asserted from which one could conclude that counsel's status as a member of the "biased" legal community motivated the breach of contract.

Count Two fails even to allege all the elements of a § 1981 claim. That count alleges:

> . . .Perkins breached his agreement with Bell by not informing Judge Baxter of Bell's requirements for visitation during a scheduled court hearing. . . . Because

10

>Bell is an African-American, he was not expected to notice what was going on during and after the conclusion of this legal proceeding.

an. (*Id.* ¶ 119.)  Thus, plaintiff asserts that Perkins breached the agreement by failing to request visitation, and he alleges that counsel expected him not to notice counsel's mistake because plaintiff is African American.  Plaintiff does not allege that Perkins failed to request visitation *because* Bell is an African-American.  Even if this were a sufficient statement of the elements of a § 1981 claim, Count Two's claim of intentional discrimination is, like Count One, unsupported by any facts.

Plaintiff's remaining civil rights claim against Perkins arise under 42 U.S.C. § 1985, which prohibits certain types of conspiracies.  Specifically, the statute prohibits conspiracy to prevent a United States officer from performing his duties [subsection (1)], conspiracy to interfere with parties, witnesses or jurors in federal court proceedings [subsection (2)], conspiracy to obstruct justice in any state or territory with the intent to deny any citizen equal protection of the laws [subsection (2)], and conspiracy to deprive another person of the equal protection of the law [subsection (3)].  Plaintiff has failed to designate the specific subsection or subsections of § 1985 on which his claims in Counts One, Two and Three are based.  Either subsection (2) or (3) of § 1985 could apply, since these claims arise from state court proceedings and are the result of conduct allegedly intended to deny plaintiff equal protection of the laws because of his race.[5]

---

[5]A cause of action under the second clause of § 1985(2) requires proof of (1) a conspiracy to obstruct justice in any court–state or federal; (2) with intent to deny another person equal protection of the law on account of race; (3) an act in furtherance of the conspiracy and (4) injury to plaintiff or his property or deprivation of a right or privilege afforded citizens of the United States.  42 U.S.C. § 1985(2); *Chavis v. Clayton Count School Dist.*, 300 F.3d 1288, 1291-92 (11th Cir. 2002).  "The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the

Counts One and Three are due to be dismissed for failure to allege facts that would amount to a conspiracy. It is well-settled that "'conclusory, vague and general allegations of conspiracy may justify dismissal of a complaint." *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 406 (11th Cir. 1985) (per curiam). Count One names only Perkins and relates facts regarding Perkins' failure to present certain evidence during the child support hearing. No other conspirators are named, no agreement is alleged and the object of any purported conspiracy is unknown. Count Three names three defendants–Philip Mason, Steve Bradley and Phil Perkins–and asserts that in the circuit court hearing Mason misstated testimony from an earlier hearing regarding plaintiff's income, Bradley did not accurately record the circuit court proceedings and that "Perkins was a participant in this biased process." (Compl., Doc. 1, ¶ 125.) While there is at least a sufficient number of defendants to make up a conspiracy, no particulars are alleged–no agreement, no object and no date, time or place.

Although the § 1985 conspiracy asserted in Count Two contains specific allegations of a conspiracy, it is insufficient to state a claim for another reason. The allegations of conspiracy in that count are more specific, setting forth the names of the conspirators (Perkins and Bradley), the object of the conspiracy (to include information in the transcript that was omitted from the hearing) and the time frame of the agreement (after the hearing and before the transcript was certified). Missing from this claim are any facts from which an injury could be inferred. The information allegedly added to the transcript involved the visitation demands plaintiff had given

---

purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States..'" *Trawinski v. United Technologies,* 313 F.3d 1295, 1299 (11th Cir. 2002).

to Perkins. According to plaintiff, Perkins failed to convey these to Judge Baxter at the hearing, and Judge Baxter had ordered visitation that was less favorable than plaintiff had asked for. Later, according to plaintiff, Perkins and Bradley altered the transcript to make it appear as though Perkins had actually requested the visitation plaintiff had sought. Even if these facts are true, there is no injury resulting from the altered transcript. Plaintiff has not alleged that alteration adversely affected his appeal. Moreover, it is impossible to conceive of any adverse effect because the information added could only have helped Bell's appeal--by preserving his position on visitation as an issue that could have been raised on appeal.

**Philip Mason**

Philip Mason is an assistant district attorney who prosecuted the child support action against Bell on behalf of the state of Alabama. Mason is charged in Count Three with violations of §§ 1983 and 1985 based on statements Mason made while questioning Bell during the state circuit court hearing. Mason has raised several defenses to this claim, but only one need be addressed. As a prosecutor, Bell is entitled to absolute immunity from civil liability for actions undertaken as part of his official function. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *see also White v. Bloom*, 621 F.2d 276 (8th Cir. 1980) (extending prosecutorial immunity in § 1985 action). Because this claim is based on actions or statements by Mason in the performance of his official duties as a prosecutor, he is entitled to absolute immunity.

**Steve Bradley**

Steve Bradley, a court reporter for the Circuit Court of Clarke County, is charged in Counts Two with violations of §§ 1981, 1983 and 1985 and in Count Three with violations of §§

1983 and 1985.  Bradley asserts several grounds for dismissal of these claims. One is failure to state a claim.  For the same reason Counts Two and Three failed to state a § 1985 claim against Perkins , *supra* at 10-11, they also fail to state a claim against Bradley and are due to be dismissed. Plaintiff's complaint is also insufficient to state a § 1981 claim against Bradley. There is no allegation of a contractual relationship between Bradley and plaintiff, and no facts from which a such a relationship might be inferred.[6]

As to plaintiff's § 1983 claims, Bradley raises several immunity defenses.  Relying on *Sparkman v. Stump*, 435 U.S. 349 (1978), a case dealing with *judicial* immunity, Bradley argues that the doctrine of quasi-judicial immunity entitles him to absolute immunity from suit. However, in *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429 (1993). a case directly on point, the United States Supreme Court held that quasi-judicial immunity does not apply to court reporters.  Alternatively, Bradley also argues that he is immune from suit in his official capacity and is entitled to qualified immunity from suit in his individual capacity. It is well-settled that official-capacity suits seeking monetary damages against state officials are suits against the state and, therefore, prohibited by the doctrine of sovereign immunity.  *See Kentucky v. Graham,* 473 U.S. 159 (1985).  Consequently, plaintiff's suit against Bradley in his official capacity is due to be dismissed.

The doctrine of qualified immunity protects officials from liability–and from litigation–for discretionary conduct that violates a plaintiff's constitutional or statutory right

---

[6]At most, plaintiff alleges that Bradley was involved in a cover-up of Perkins' failure to perform under the attorney-client contract by adding to the transcript visitations demands that Perkins had failed to make in court.  While Bradley's actions may had a tangential relationship to that contract, they did not affect the performance of it because Perkins' failure to perform had already occurred.

unless that right was clearly established. *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007). To establish that he is *prima facie* entitled to qualified immunity, a defendant must prove that he was acting within the scope of his discretionary authority when the conduct complained of occurred. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2006). Because the allegations here involve Bradley's transcription of court proceedings–a matter clearly within his discretionary authority as a court reporter–defendant's burden is satisfied. Next, the burden shifts to the plaintiff to show: (1) defendant's conduct resulted in a violation of plaintiff's constitutional right and (2) that right was clearly established. *Id.* Plaintiff cannot meet his burden in this case because "[a] plaintiff does not have a constitutional right to a totally accurate transcript of his criminal trial. His constitutional rights would be violated only if inaccuracies in the transcript adversely affected the outcome of the [case]." *Tedford v. Hepting*, 990 F.2d 745, 747 (3d Cir. 1993). As noted above, *supra* at 12, the alleged alterations to the transcript occurred after Judge Baxter issued the support and visitation orders that plaintiff considered unfavorable. Consequently, those alterations did not affect the outcome of the circuit court proceedings. Since there is no allegation these changes or inaccuracies had any effect on the outcome of the appeal, no constitutional violation has been alleged. Plaintiff's § 1983 claims against Bradley are, therefore, due to be dismissed.[7] [8]

---

[7] In addition, the § 1983 claim asserted against Bradley in Count Three is to due to be dismissed for failure to state a claim. At most, that count asserts that Bradley acted negligently by failing to accurately record the proceedings. Court reporters are not liable under § 1983 for negligent or innocent errors. *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006).

[8] Bradley also raises a statute of limitations defense to the § 1983 claims. As the Court discussed in granting the Grove Hill defendant's motion to dismiss, *supra* at 7-8, the statute of limitations applicable to a § 1983 claim is two years. Bradley argues that the complaint is due to be dismissed because more than two years elapsed between the date of the state court

**Conclusion**

All of plaintiff's claims are due to be dismissed for failure to state a claim upon which relief can be granted. Accordingly, the motions to dismiss filed by defendants Phil Perkins, Philip Mason, Steve Bradley, Lamar Johnson, Amee Moore, Jackie Garrick, Buster Hough, Lamar Hudson and the City of Grove Hill are hereby **GRANTED**.

**DONE** and **ORDERED** this the 7th day of January, 2008.

*s/Charles R. Butler, Jr.*
**Senior United States District Judge**

---

proceedings giving rise to this action and the date this action was filed. However, plaintiff's claims against Bradley are based on alleged errors or alterations in the transcript of those proceedings. The transcript would not have been available until some time after the hearing, and the complaint does not contain any information from which the Court could determine when plaintiff knew or should have known that the transcript was inaccurate. Therefore, the complaint does not, on its face, demonstrate that plaintiff's claims against Bradley are barred by the statute of limitations.